IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, <br><br> Plaintiff, <br><br> v. <br><br> CONEMAUGH VALLEY MEMORIAL HOSPITAL t/d/b/a MEMORIAL MEDICAL CENTER, CONEMAUGH HEALTH SYSTEM, INC., UPMC LEE REGIONAL HOSPITAL AND UPMC, d/b/a UNIVERSITY OF PITTSBURGH MEDICAL CENTER. <br><br> Defendants. | CIVIL ACTION NO. 05-318J |

## COMPLAINT

The Commonwealth of Pennsylvania, through its Office of Attorney General, brings this action under the federal antitrust laws to block the proposed combination of the two largest hospitals, Conemaugh Valley Memorial Hospital ("Memorial") and UPMC Lee Regional Hospital ("UPMC Lee"), in the relevant geographic market, which includes Cambria County and northern Somerset County in Western Pennsylvania (hereinafter referred to as "the relevant geographic market"), through the acquisition of UPMC Lee by Memorial and Conemaugh Health System, Inc.

Unless prevented, this combination is likely to substantially lessen or eliminate competition in the provision of primary and secondary inpatient acute-care hospital services, as well as the provision of medical and ancillary services associated with those hospitals. Further,

this combination would reduce the number of competitive alternatives available to health care consumers and enable Memorial and Conemaugh Health System, Inc. to raise prices with no competitive constraint, resulting in higher prices for primary and secondary inpatient acute-care hospital services in the relevant geographic market. These higher prices will be borne by health care purchasers, particularly Health Plans, employers and unions, and will likely result in an increase in prices individual consumers pay for health insurance coverage. Health Plans cannot currently market a product in Cambria or northern Somerset Counties without either Memorial or UPMC Lee in their network. Post-acquisition, a Health Plan must have a contract with a Conemaugh Health System, Inc. Johnstown hospital or it will be unable to market its product in Cambria or northern Somerset County.

## I. Jurisdiction and Venue

1. This Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 4 and 26, and 28 U.S.C. §§ 1331 and 1337.

2. Defendants are found and transact business within this district and the claims in substantial part arise in this district. Venue is proper in the Western District of Pennsylvania under sections 12 and 16 of the Clayton Act, 15 U.S.C. §§ 22 and 26, and under 28 U.S.C. §§ 1391(b) and (c).

## II. Parties

3. The Commonwealth of Pennsylvania brings this action as <u>parens patriae</u> to protect its general economy and as a direct purchaser of hospital services from defendants through its Medicaid and Pennsylvania Employee Benefits Trust Fund programs.

4. Conemaugh Valley Memorial Hospital, t/d/b/a Memorial Medical Center ("Memorial") means the not-for-profit corporation organized under the laws of the Commonwealth of Pennsylvania and having its principal address of 1086 Franklin Street, Johnstown, PA 15905, that is part of Conemaugh Health System, Inc.

5. Conemaugh Health System, Inc. ("CHS") means the not-for-profit corporation organized under the laws of the Commonwealth of Pennsylvania and having its principal address at 1086 Franklin Street, Johnstown, PA 15905. CHS is the sole corporate member of Memorial, a not-for-profit hospital located in the city of Johnstown, Cambria County, Pennsylvania, Windber Medical Center ("Windber"), a not-for-profit hospital located in Windber, Somerset County, Pennsylvania, and Meyersdale Medical Center ("Meyersdale"), a not-for-profit hospital located in Meyersdale, Somerset County, Pennsylvania. CHS is one of two corporate members of Miners Medical Center ("Miners"), a not-for-profit hospital located in Hastings, Cambria County, Pennsylvania.

6. UPMC Lee Regional Hospital ("UPMC Lee") means the not-for-profit corporation organized under the laws of the Commonwealth of Pennsylvania having its principal address at 320 Main Street, Johnstown, PA 15901, that is part of UPMC.

7. UPMC d/b/a University of Pittsburgh Medical Center ("UPMC"), having an address of 200 Lothrop Street, Pittsburgh, PA 15213, is the corporate parent of UPMC Lee and many other hospitals throughout western Pennsylvania and the corporate parent of Community Nursing, Inc., a Pennsylvania not-for-profit corporation having its principal address at 119 Walnut Street, Johnstown, PA 15901.

## III. Definitions

8. "Acute-care Hospital" means a health care facility, licensed as a hospital, having a duly organized governing body with overall administrative and professional responsibility and an organized medical staff that provides 24-hour inpatient care as well as outpatient services and having as a primary function the provision of inpatient services for medical diagnosis, treatment and care of physically injured or sick persons with short-term or episodic health problems or infirmities.

9. "Acquire" means to purchase the whole or the majority of the assets, stock, equity, capital, or other interest of a corporation or other business entity, or to receive the right or ability to designate or otherwise control the majority of directors or trustees of a corporation or other business entity.

10. "Health-care Provider" means any physician, hospital, clinic, laboratory or physician network.

11. "Inpatient Acute Care" includes room and board, medical or surgical diagnostic and treatment services, around-the-clock monitoring and observation, nursing care, laboratory, x-ray and support services for physically injured or sick persons with short-term or episodic health problems or infirmities.

12. "Health Plan" means all types of organized health-service purchasing programs, including, but not limited to, health insurance and managed-care plans, offered by government, for-profit or non-profit, third-party payors, health care providers or any other entity.

13. "Managed-care Plan" means a health maintenance organization ("HMO"), preferred provider organization ("PPO") or other health-service purchasing program which uses financial or other incentives to prevent unnecessary services and includes some form of utilization review.

14. "Member Hospitals" means Windber, Meyersdale and Miners.

15. "HHI" means the Herfindahl-Hirschman Index, a measure of market concentration calculated by squaring the market share of each firm competing in the market and then summing the resulting numbers. For example, for a market consisting of four firms with shares of 30%, 30%, 20% and 20%, the HHI is 2,600 ($30^2 + 30^2 + 20^2 + 20^2 = 2,600$). The HHI takes into account the relative size and distribution of the firms in a market. It approaches zero when a market is occupied by a large number of firms of relatively equal size and reaches its maximum of 10,000 when a market is controlled by a single firm. The HHI increases both as the number of firms in the market decreases and as the disparity in size between those firms increases.

## IV. Trade and Commerce

16. According to data published by the Pennsylvania Health Care Cost Containment Council, total net patient revenues of Memorial in 2004 were more than $216 million and total operating expenses exceeded $229 million. Total net patient revenues of UPMC Lee in 2004 were more than $83 million and total operating expenses were more than $95 million. Each hospital is engaged in interstate commerce and their activities are in the flow of, and substantially affect, interstate commerce.

17. The provision of inpatient acute care occurs, at least in part, through various channels of interstate communication and transportation.

## V. Relevant Geographic Market

18. CHS is a not-for-profit health care provider system located in the City of Johnstown, Cambria County. The major operating entities within CHS are Memorial, a 566-bed, short-term general acute care facility located in Johnstown, Pennsylvania, Windber, an 82-bed, short-term general acute care facility located in Windber, Pennsylvania, Meyersdale, a 20-bed, short-term general acute care facility located in Meyersdale, Pennsylvania, and Miners, a 30-bed, short-term general acute care facility located in Hastings, Pennsylvania. Hospitals in surrounding counties of Westmoreland, Blair, Indiana and most of Somerset provide almost no competition to the merging hospitals. UPMC Lee provides the only significant competition to Memorial. Less than 17% of all hospital days by persons residing in Cambria and northern Somerset Counties occur at hospitals outside this area.

19. CHS, Memorial and UPMC Lee, which is also a not-for-profit health care provider located in the City of Johnstown, Cambria County, seek to consolidate through CHS and Memorial's acquisition of UPMC Lee from UPMC. UPMC operates hospitals throughout Western Pennsylvania, and its sole operating hospital in Cambria County is UPMC Lee, a 244-bed, short-term general acute care facility.

20. Memorial and UPMC Lee are each other's sole significant competitor for the provision of primary and secondary inpatient acute care hospital services. There are no other hospitals within the relevant geographic market except CHS Member Hospitals, Windber and Miners.

21. The geographic market is an area that includes most of Cambria County and the following zip codes in northern Somerset County: 15531, 15927, 15928, 15935, 15953 and 15963. This market includes only four hospitals: UPMC Lee, Memorial and two CHS Member Hospitals, Windber and Miners. CHS's other Member Hospital, Meyersdale, is located in southern Somerset County and is not in this geographic market.

22. In the event of a significant price increase, Health Plans cannot turn to hospitals outside this geographic market as substitutes and continue to market a product in Cambria and northern Somerset Counties.

23. Pre-acquisition, a Health Plan could have either Memorial or UPMC Lee in its network and offer a product in Cambria County.

24. Health Plans cannot use hospitals outside this geographic market to constrain prices at any hospital in CHS's system post acquisition.

25. Hospitals located outside this geographic market do not view themselves as competitors of Memorial or UPMC Lee and in fact state that Memorial and UPMC Lee are each other's only competitor.

26. Persons residing within this geographic market stated they will not travel to hospitals outside the geographic market unless it is to Pittsburgh for highly-specialized tertiary services and quaternary services, such as transplants.

## VI. Relevant Product Market

27. CHS, Memorial and UPMC Lee sell inpatient acute-care hospital services to a variety of purchasers, including managed-care plans, such as HMOs and PPOs. Managed-care plans

reduce health-care costs by encouraging hospitals to compete vigorously on price and quality. These plans contract with a select number of hospitals and employ financial incentives to encourage plan enrollees to use the contracted facilities.

28. Through competition for the provision of hospital services to their managed-care plans, these price-sensitive health-care purchasers secure hospital services at competitive rates, which substantially contains overall costs of hospital care. This, in turn, permits managed-care plans to offer health insurance to consumers at lower prices. Managed-care plans constitute a significant and growing percentage of CHS, Memorial and UPMC Lee's revenues from patient care.

29. In addition to providing inpatient acute-care hospital services, acute-care hospitals also treat patients on an outpatient basis and for those services, compete with other types of providers, such as clinics, ambulatory surgery centers and physicians' offices. Patients whose treatment or condition requires an overnight hospital stay, however, cannot be safely or effectively treated on an outpatient basis. For that reason, health-care purchasers, including managed-care plans, do not view outpatient services as substitutes for inpatient acute-care hospital services. Acute-care hospitals could profitably increase the price of inpatient acute-care hospital services without causing a significant number of health-care purchasers to switch to outpatient services.

30. The provision of inpatient acute-care hospital services constitutes a line of commerce, or a relevant product market, within the meaning of section 7 of the Clayton Act.

## VII. Market Concentration

32. The market is highly concentrated by any measure of hospital capacity or output and market concentration would increase substantially as a result of the proposed combination of CHS, Memorial and UPMC Lee. The combined entity would control 85.4% of the market. Memorial is the largest acute-care hospital, UPMC Lee is the second largest acute-care hospital and Windber is the third largest acute-care hospital in the relevant geographic market.

33. Currently, the pre- and post-acquisition hospital market shares for inpatient acute-care hospital services in the relevant geographic market, which includes Cambria and a small part of northern Somerset County, using a study prepared by UPMC in August 2003 are as follows:

| Hospital | Mkt. Share % |
|---|---|
| Memorial | 50.4% |
| UPMC Lee | 28.5% |
| Windber | 6.2% |
| Miners | .3% |
| **Total:** | **85.4%** |

34. The proposed merger increases concentration significantly in the inpatient acute-care hospital services market in the relevant geographic market. The pre-merger HHI of 5,000 already signifies a very concentrated market and the merger will result in an increase in the HHI of 3,000 points to 8,000. An HHI of more than 1,800 indicates a concentrated market and an increase in HHI by more than 100 in an already concentrated market will presumptively increase the ability of the merged parties to exercise market power.

35. The provision of inpatient acute-care hospital services is distinct from the provision of services by other types of health care facilities, such as clinics, ambulatory surgery centers, physicians offices, nursing homes or rehabilitation or psychiatric hospitals.

36. There are no substitutes for the inpatient acute-care hospital services provided by acute-care hospitals.

37. In the foreseeable future, no new acute-care hospital is likely to enter the relevant geographic market.

38. As new entry appears unlikely and the parties cannot justify creating a monopoly with efficiencies or a failing firm defense, the acquisition of UPMC Lee by CHS and Memorial will lessen competition and tend to create a monopoly and is illegal.

## VIII. Violation

39. As a direct result of the merger, competition for inpatient acute-care hospital services in the relevant geographic market may be substantially lessened in the following ways, among others:

   A. Existing competition and the potential for increased competition between CHS, Memorial and UPMC Lee for the provision of inpatient acute-care hospital services in the relevant geographic market will be permanently eliminated;

   B. Concentration in the relevant product market in Cambria and northern Somerset Counties will be substantially increased;

   C. The likelihood of collusion in the relevant product market in Cambria and northern Somerset Counties may be substantially increased; and

    D.      Increased concentration in Cambria and northern Somerset Counties may enhance the ability of the merged entities to increase prices and decrease quality of service with little fear that such price increases and decreases in quality of service will be defeated by existing fringe competitors or new market entrants;

40. The proposed acquisition violates section 7 of the Clayton Act, 15 U.S.C. § 18.

## IX. Injury

41. Unless the violations described above are enjoined, the Commonwealth of Pennsylvania will suffer direct, immediate and irreparable damage to its general economy and as a direct purchaser of inpatient acute-care hospital services. There is no adequate remedy at law.

## X. Relief Requested

WHEREFORE, plaintiff prays:

(a) That the proposed acquisition of UPMC Lee by CHS and Memorial be adjudged to be in violation of section 7 of the Clayton Act;

(b) That defendants, their parents, subsidiaries, affiliates, directors, officers, agents, successors and assigns and all others acting on their behalf, be preliminarily and permanently enjoined from taking any action directly or indirectly to consummate the proposed acquisition of UPMC Lee by CHS and Memorial;

    (c)    That defendants be ordered to pay plaintiff's costs and attorneys' fees; and

    (d)    That the Court grant such other relief as it deems appropriate.

Dated:    July 28, 2005    Respectfully submitted,

Thomas W. Corbett, Jr.
Attorney General

By: *[signature]*

James A. Donahue, III
Chief Deputy Attorney General
Antitrust Section
Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-4530
(717) 705-7110 (fax)
jdonahue@attorneygeneral.gov
PA 42624

*[signature]*

Jennifer A. Thomson
Deputy Attorney General
Antitrust Section
Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-4530
(717) 705-7110 (fax)
jthomson@attorneygeneral.gov.
PA 89360

*[Signature]*
Tracy W. Wertz
Deputy Attorney General
Antitrust Section
Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA  17120
(717) 787-4530
(717) 705-7110 (fax)
twertz@attorneygeneral.gov
PA 69164

Attorneys for the Commonwealth
 of Pennsylvania

JAD/lkl/complaint984

13